[Civ. No. 3411. First Appellate District, Division One.—August 27, 1920.]

## F. L. LITTLE et al., Respondents, v. GEORGE ROOP, Appellant.

[1] DEEDS — RIGHT TO WATER FROM WELL — INTEREST IN PUMPING PLANT—CONVERSION—CONSTRUCTION OF CONVEYANCE.—A clause in a deed giving the grantee the perpetual water right to a specified quantity of water from a certain well located on neighboring property of the grantor and the right to lay and maintain pipes or conduits to convey water in the most direct course practical over the land of the grantor from such well to the land conveyed, will not give the grantee such an interest in the pumping plant, engine, and casing connected with such well at the time of the conveyance as will furnish the foundation for a suit for conversion, upon the dismantling and sale thereof by the successor in interest of the grantor in the servient tenement.

APPEAL from a judgment of the Superior Court of Tulare County. Stanley A. Smith, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Guy Knupp for Appellant.

J. A. Chase and Max B. Jamison for Respondents.

RICHARDS, J.—This is an appeal by defendant from a judgment in favor of the plaintiffs for the sum of $540

in an action brought to recover damages for the alleged conversion of personal property.

But one question need be considered, namely: Did the plaintiffs have such an interest in the property alleged to have been converted as could furnish a foundation for the present action?

[1] It appears from the record that both of the plaintiffs and the defendant were severally the owners of parcels of agricultural land in a tract known as Grand View Heights Colony, deriving their title either directly or through mesne conveyances from a common grantor, the Garden City Bank and Trust Company. The defendant's parcel was described as the south half of lot 3, and upon it was situated a well together with a pump, engine, and casing used in connection therewith and firmly attached to the realty. The respective deeds under which the plaintiffs each deraigned title contained the following language immediately after the description of the land conveyed:

"Together with the perpetual water right to . . . miner's inches of water from that certain well now located on Lot 3 in Block B of Grand View Heights Colony, said miner's inches of water above referred to to be equal to 1/50 part of one cubic foot per second continuous flow; also the right to lay and maintain pipes or conduits to convey water in the most direct course practical over the property of the party of the first part from the well above mentioned to the land herewith conveyed."

(In one case the number of miner's inches of water granted was two and in the other five.)

For several years the plaintiffs and the defendant each took water from the said well, using the pump, engine, and casing for that purpose, and taking it at such times as were mutually convenient. The immediate expense of pumping the water was borne by the party taking it, and the general expense of maintaining said machinery was borne in agreed proportions. On January 16, 1918, the defendant dismantled the pump, engine, etc., and sold them; and the plaintiffs, claiming to be the owners of a three-fifths interest in said machinery, brought this action of conversion to recover that proportion of the proceeds of said sale. In support of the judgment in their favor it is their claim that the clause in their respective deeds above quoted should be

construed to give them a specific interest in the pump and machinery attached to the well on defendant's land, entitling them to a like proportion of the value of such machinery upon its sale by the defendant. Plaintiff Little further supported his claim by evidence (which the court received over the objection of the defendant that it was incompetent) that at the time he purchased his land from the Grand View Heights Colony Company the defendant, being then an officer and agent of the company, represented and stated to him that in the event of his making the purchase he would be entitled to a two-fifths interest in said pumping plant. This representation was denied by the defendant, but whatever the fact may be as to this episode, we think it clear that Little's right to recover a proportion of the proceeds of the sale of the machinery in an action of conversion must, in the absence of a reformation of the instrument by which he obtained title, be based upon the terms of that instrument. The defendant's claim, of course, is that the pumping plant, being situated upon his land and firmly attached to the realty, was a part thereof, and that the plaintiffs owned by virtue of their respective deeds merely an easement consisting of a right to take the several quantities of water stated in their deeds.

We find it impossible to agree with the contention of the plaintiffs as to the construction of the provision of the deed above quoted. Its effect is plainly to confer the right upon the grantee to take or receive from the well situated on lot 3 of block B the quantity of water designated. Even if we go further and concede for the sake of argument that such clause of the deed, taken in connection with the practice pursued by the parties, was intended also to confer the right to use the pumping machinery attached to said lot 3, such a right would only enlarge the easement granted by increasing the burden imposed upon defendant's tract of land. Any interference by the defendant with such easement would doubtless give to the owner of the dominant tenement a right of action for damages; but there is nothing in the title deeds of the plaintiffs, or in any other evidence received on their behalf, transferring to them any such specific interest in the pumping plant which could give rise to an action in conversion in their favor against one dismantling or taking possession of such plant. The legal situ-

ation is no different from that presented in the case of an easement of right of way, upon which right of way might be a bridge used in connection with and forming part of it. If the owner of the servient tenement should tear down the bridge and sell the lumber of which it had been constructed, the owner of the easement could claim no interest in the lumber or the proceeds of its sale, but must pursue his remedy for damages for interference with his easement. We are of the opinion, therefore, that the trial court's finding that the defendant converted the property in question to his own use to the damage of the plaintiffs, the measure of which was three-fifths of the amount received from its sale, is contrary to the evidence, and its judgment, therefore, erroneous.

This defect being fundamental, it is unnecessary to consider other points urged by the respondents in support of the judgment.

Judgment reversed.

Waste, P. J., and Welch, J., *pro tem.*, concurred.